UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 5:06-CR-33-JBC-3 |
| Plaintiff/Respondent, | ) | No. 5:09-CV-7057-JBC |
| | ) | |
| v. | ) | No. 5:06-CR-33-JBC-4 |
| | ) | No. 5:09-CV-7058-JBC |
| GLORIA ANN WILLIAMS and RITA | ) | |
| FAYE TIPTON,[1] | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendants/Movants. | ) | |

*** *** *** ***

On January 23, 2009,[2] Defendants/Movants Gloria Ann Williams and Rita Tipton moved

pro se for relief under 28 U.S.C. § 2255. *See* DE #199 (Williams's Motion to Vacate); DE #200

(Tipton's Motion to Vacate). The United States responded in opposition to each on March 10,

2009. *See* DE #203 (Response to Tipton); DE #204 (Response to Williams).

Over a year later, on April 27, 2010, Williams and Tipton, by the same counsel,

submitted essentially identical documents styled "Supplement to Defendant's Motion Under 28

---

[1] The Court addresses Williams's and Tipton's motions under 28 U.S.C. § 2255 in this
unified Recommended Disposition because Defendants/Movants, who received convictions in
the same case, submitted almost identical motions. At trial, Williams and Tipton had the same
attorney. *See* DE #30 (Waiver of Dual Representation). Defendants/Movants identify themselves
as sisters, *see, e.g.*, DE #200-2 (Cover Letter), and appear to be pursuing section 2255 review
together. They evidently hired the same attorney to assist them with their motions.
    While the Court makes this drafting choice for judicial efficiency and consistent with the
parties' apparent wishes, based on their motions, the Court notes that each Defendant/Movant
ultimately stands alone, with her claims rising or falling on their own procedural and substantive
merits.

[2] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-
13 (6th Cir. 2002) (per curiam). Williams and Tipton submitted their section 2255 motions in the
same envelope.

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody."[3] *See*

DE #212 (Tipton Supplement); DE #213 (Williams Supplement). The United States responded in

opposition to each on May 11, 2010. *See* DE #214 (Response to Williams); DE #215 (Response

to Tipton).

Having considered the full record, and for the reasons articulated herein, the Court

**RECOMMENDS** that the District Judge **DENY** section 2255 relief as to all grounds raised by

Williams and Tipton. Additionally, the District Court should not grant a Certificate of

Appealability to either Defendant/Movant.

## I. BACKGROUND

The United States Court of Appeals for the Sixth Circuit has offered a detailed summary

of the factual background in this matter, quoted at length to give context to this decision:

> In the mid-1980s Tipton formed Jackpot Charity Bingo ("Jackpot"), a bingo
> gaming facility in Waco, Kentucky. She owned and operated the business while
> her sister, Williams, worked for charities that held bingo sessions at Jackpot. In
> 1992, Tipton transferred ownership of Jackpot to her son.
>     New efforts at regulating the Kentucky bingo industry took effect shortly
> thereafter, including a new state law requiring separation between bingo halls and
> the charitable organizations that hold bingo sessions at the bingo halls. *See* Ky.
> Rev. Stat. § 238.500. One provision required that immediate family members of
> the owners of bingo halls refrain from participation in any gaming activity. *See*
> Ky. Rev. Stat. §§ 238.505(20); 238.555(3). The law also required that bingo halls
> maintain specific records and submit quarterly reports to the Office of Charitable
> Gaming ("OCG"), the administrative agency charged with overseeing charitable
> bingo operations. *See* Ky. Rev. Stat. §§ 238.550(7); 238.555(6); 238.510.
>     Though prohibited from involvement in charitable gaming activity due to
> her son's ownership of Jackpot, Tipton continued to participate in Jackpot
> operations. In February of 2000, the OCG began an investigation of Jackpot after

―――――――――――――

[3] Neither Williams nor Tipton, by their counsel, ever requested leave to file the
"Supplement," which raises a new ground for relief not raised in the original section 2255
motions. Further, the "Supplement" contains no motion to amend or relation-back argument
under Federal Rule of Civil Procedure 15.

receiving allegations that Tipton and members of her family, including Williams, were simultaneously operating both the bingo hall and the charities, engaging in "under the table" gambling, and withholding profits from the charities for their own personal gain.

The investigation proceeded in three stages. First, a review of the bank records of charities holding bingo at Jackpot revealed that: Williams had signature authority for the charitable gaming bank accounts for charities holding bingo sessions at Jackpot; there was a commingling of funds between Jackpot and the charities; and Tipton and Williams had cashed checks drawn on Jackpot's account for personal expenses.

Second, undercover surveillance of Jackpot operations in March of 2000 revealed that Williams and Tipton were engaged in the sale of gambling tickets known as "pull-tab cards" at Jackpot.[FN1] Despite Kentucky Administrative Regulations requiring that pull-tab cards be purchased from state-licensed distributers in Kentucky, *see* 820 Ky. Admin. Regs. 1:032, OCG investigators found that Tipton enlisted her brother to travel to Ohio to purchase the illegal pull-tab cards. In addition, surveillance of Jackpot operations on one evening led OCG investigators to conclude that $2,439 in gaming funds were unaccounted for during that day's bingo session.

> FN1. Under Kentucky law, a pull-tab card is "a game of chance using a folded or banded paper ticket, or a paper card with perforated break-open tabs, the face of which is covered or otherwise hidden from view to conceal a number, letter, symbol, or set of numbers, letters, or symbols, some of which have been designated in advance as prize winners and shall include charity game tickets that utilize a seal card." Ky. Rev. Stat. § 238.505.

Third, OCG agents reviewed statements provided by various casinos detailing Tipton and Williams's wins and losses at their establishments, which revealed that the Defendants were wagering funds in excess of what the income as disclosed on their state tax returns would allow. The financial data concerning the Defendants' win/loss records was based on the "players club cards" that Tipton and Williams inserted into slot machines as they wagered money at the casinos. The casinos reported that between 1998 and 2001, Tipton and Williams both lost thousands of dollars. Despite experiencing large financial losses at the casinos, Tipton and Williams reported little or no income from 1998 to 2001 on their state income tax returns. Tipton's tax returns reported only income of small amounts of interest and capital gains, and Williams's returns reported Social Security benefits and small amounts of interest and capital gains. Based on its findings, the OCG referred the case to the Internal Revenue Service Criminal Investigation Division in July of 2001.

The IRS then began its own investigation. IRS investigators started their inquiry by procuring the Defendants' federal tax returns. Next, a search of

Tipton's curbside garbage was conducted, which uncovered: correspondence addressed to Jackpot; utility bills for Jackpot; pull-tab card sales records; correspondence addressed to a charity holding bingo sessions at Jackpot; and promotional material from various casinos. IRS investigators conducted video surveillance of Jackpot, and observed Tipton and Williams at Jackpot on eight out of the eleven nights that surveillance was conducted. Investigators also followed Tipton and Williams as they drove in separate vehicles to make a deposit at the bank where one of the charities maintained its gaming account.

On April 9, 2003, search warrants were executed at Tipton's and Williams's homes. When Tipton and Williams were interviewed, they acknowledged a penchant for gambling, but failed to report any type of employment or significant source of income. Tipton did not claim any alternative sources of cash.

An IRS investigator performed an investigative technique known as an "expenditure analysis" in order to determine Tipton's and Williams's unreported taxable income and tax liability from 1998 through 2001. An expenditure analysis notes discrepancies between an individual's documented expenses and reported income. According to the investigator that testified at trial, "[i]f [an individual] spend[s] more than [his or her] reported sources of income and [ ] non-taxable sources of income, then logically [there exists] another source [of income] that hasn't been disclosed." Based on this analysis, the IRS investigator concluded that Tipton had unreported income totaling $159,713.70 from 1998 through 2001, and owed $32,546 in unpaid taxes. The investigator also determined that Williams had $185,228.53 in unreported income during the same time period, and owed $48,856.75 in unpaid taxes.

On February 3, 2006, Tipton and Williams, as well as two other individuals, Cletis and Brenda Adams ("the Adamses"), were indicted for: (1) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (2) tax evasion, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2; and (3) mail fraud, in violation of 18 U.S.C. § 1341. The Adamses, who are not parties to this appeal, both pleaded guilty to one count of tax evasion, and were sentenced to three months' imprisonment, and ordered to pay $61,663 in restitution.

Tipton and Williams filed a joint motion to dismiss the conspiracy charges, arguing that the alleged conspiracy should have been charged under the "offense clause" of 18 U.S.C. § 371, with the substantive offense being tax evasion, in violation of 26 U.S.C. § 7201. The district court denied the motion.

The jury found Tipton and Williams guilty on all counts. The district court sentenced the Defendants to 60 months' imprisonment on the conspiracy and tax evasion counts and 63 months' imprisonment on the mail fraud counts, with the sentences to run concurrently. Tipton was ordered to pay $32,546 in restitution, and Williams was ordered to pay $48,865 in restitution.

*See United States v. Tipton*, 269 F. App'x 551, 553-55 (6th Cir. 2008).

Chief Judge Coffman entered judgment on December 18, 2006. *See* DE #119 (Judgment). Williams and Tipton filed notices of appeal nine days later on December 27, 2006. *See* DE #124 (Notice of Appeal by Williams); DE #125 (Notice of Appeal by Tipton). Less than a month later, on January 16, 2007, Judge Coffman entered an Amended Judgment with the sole change to reflect dismissal of counts on motion by the United States. *See* DE #140 (Amended Judgment). On March 14, 2008, the Sixth Circuit affirmed the convictions and sentences. *See* DE #192 (Information Copy of Sixth Circuit Opinion). The appellate court specifically rejected seven arguments on appeal:

> (1) that Defendants had been improperly charged under the "defraud clause" of 18 U.S.C. 371, *see Tipton*, 269 F. App'x at 555;

> (2) that the evidence stood as insufficient for conviction on conspiracy to defraud the United States, *see id.* at 557;

> (3) that jury instructions constructively amended the indictment as to conspiracy to commit fraud, *see id.* at 558;

> (4) that the District Court erred in excluding the testimony of Troy Farthing and Patsy Woolum, *see id.* at 559;

> (5) that the District Court erred in excluding the testimony of expert William Farmer, *see id.*;

> (6) that the District Court erred in its calculation of "loss" under United States Sentencing Guidelines section 2B1.1, *see id.* at 560; and

> (7) that, based on disparate sentences given to co-conspirators, the District Court penalized Defendants for exercising their right to go to trial. *See id.* at 562.

Williams and Tipton had until June 12, 2008, to petition the United States Supreme Court for a writ of certiorari, but chose not to do so.

Defendants/Movants filed the instant section 2255 motions pro se on January 23, 2009. *See* DE #199; DE #200. Much later and by counsel, Williams and Tipton filed a document styled

"Supplement" on April 27, 2010. *See* DE #213.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255. To prevail on a section 2255 motion alleging constitutional error, the Movant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States,* 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson,* 113 S. Ct. 1710, 1721-22 (1993)). To prevail on a motion alleging non-constitutional error, the Movant must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Watson,* 165 F.3d at 488 (citing *Hill v. United States,* 82 S. Ct. 468, 471 (1962)). In making a section 2255 motion, Movant bears the burden of proving his or her contentions by a preponderance of the evidence. *See McQueen v. United States*, 58 Fed. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

The Court shall hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). Further, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact .'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

The Court additionally recognizes the pro se statuses that Williams and Tipton maintained through part of this action. Pro se motions receive a comparatively lenient construction by the Court. *See Castro v. United* States, 124 S. Ct. 786, 791-92 (2003) (demonstrating consideration given across the circuits for pro se petitions); *Franklin v. Rose,* 765 F.2d 82, 85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation . . . 'to encompass any allegation stating federal relief'").

## III. ANALYSIS

Reading Williams's and Tipton's section 2255 motions leniently, with respect to their pro se statuses at the time of initial filing, Defendants/Movants raise six total grounds (alone or as sub-arguments) for relief,[4] to be identified as follows:

- Ground One: The District Court erred in excluding vital witnesses. *See* DE #199 at 4; DE #200 at 4.

- Ground Two: The United States superseded the indictment to add counts against Williams and Tipton because they refused to accept a guilty plea to one count of tax evasion. *See id.*

- Ground Three: The District Court erred in calculating an appropriate loss amount.[5] *See* DE #199 at 4-5; DE #200 at 4-5; DE #212 at 3-6; DE #213 at 3-6.

- Ground Four: The District Court erred in finding sufficient evidence for conviction on mail fraud, where Williams signed quarterly reports to the

---

[4] The Court's organization of the grounds for relief does not match precisely with Williams's and Tipton's organization. However, to demonstrate that each ground raised by either party has been addressed, the Court provides pinpoint citations to the specific grounds in the motions.

[5] As part of Ground Three, Williams and Tipton assert that the subject organizations have not gone into bankruptcy. *See* DE #199 at 4-5; DE #200 at 4-5. The suggestion here appears to be that, had the organizations actually lost as much as calculated, then bankruptcy would necessarily have resulted.

Kentucky State Gaming Commission but no money was missing and Tipton never signed or mailed anything. *See* DE #199 at 5; DE #200 at 5.

- Ground Five: Attorney Dean performed ineffectively by failing to present the testimony of witnesses who could have explained where Williams's and Tipton's money came from. *See* DE #199 at 5; DE #200 at 5.

- Ground Six: The District Court violated Williams's and Tipton's rights by not attempting under the *United States Sentencing Guidelines* to differentiate between Defendants based on their level of involvement, culpability, or knowledge. *See* DE #212 at 3; DE #213 at 3.

The Court evaluates each of these grounds.

In this resolution, the Court finds no need for an evidentiary hearing. That is, the filings and records show conclusively that Defendants/Movants should receive no section 2255 relief.

## A. Procedural Issues

The United States raises several procedural objections to Williams's and Tipton's section 2255 contentions, and the Court addresses each of the procedural matters in turn: statute of limitations, procedural default, and relitigation of issues already determined on direct appeal. For reasons developed below, the Court recommends that Grounds One, Two, Three, Four, and Six be dismissed on procedural grounds.

### 1. Statute of Limitations

Ground Six, raised only by supplement, is time-barred. The United States raised timeliness as a defense to the supplemental memorandum filed by Williams's and Tipton's counsel. *See* DE #214 at 1; DE #215 at 1. This argument by the Government afforded Defendants/Movants (and their counsel) with notice of the potential statute of limitations problem and a fair opportunity to respond. See *Day v. McDonough*, 126 S. Ct. 1675, 1684

(2006). Williams and Tipton filed no response as to that issue.[6]

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Section 2255 reads in relevant part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> > (1) the date on which the judgment becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution of laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

On the record in this case, Defendants/Movants filed their section 2255 motions within the one-year statute of limitations, but Williams's and Tipton's counsel added a ground – to wit, Ground Six – outside the one-year period. Defendants/Movants lost no time until June 12, 2008, when the time for petitioning the United States Supreme Court expired. *See* Sup. Ct. R. 13(3) ("The time to file a petition for certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)."); *Clay v. United States*, 123 S. Ct. 1072, 1079 (2003) ("We hold that, for federal

---

[6] Counsel showed, by his unauthorized supplement, that lack of leave would not impede a filing.

criminal defendants who do not file a petition for certiorari with this Court on direct review, §

2255's one-year limitation period starts to run when the time for seeking such review expires.").

On that day, Williams and Tipton had the full 365 days remaining in which to raise section 2255

contentions. After their filing of pro se section 2255 motions on January 23, 2009, they had 141

days remaining in which they could have sought leave to amend their motions within the statute

of limitations. However, counsel for Williams and Tipton did not file the "Supplement" until

April 27, 2010, which means Defendants/Movants late-filed the additional ground for relief, and

thus missed the statute of limitations, by 318 days. Counsel for Defendants/Movants made no

motion to amend or argument that the challenges related back to the original section 2255

motions. The Court specifically finds no relation back as to Ground Six, which distinctly raises a

sentencing differentiation argument for the first time in the section 2255 posture.

Equitable tolling does not apply. The AEDPA statute of limitations is not jurisdictional;

therefore, equitable tolling may be permissible in some circumstances. *See Holland v. Florida*,

130 S. Ct. 2549, 2560 (2010) (citing *Day*, 126 S. Ct. at 1681); *Allen v. Yukins*, 366 F.3d 396, 401

(6th Cir. 2004). However, the doctrine applies "sparingly," and the burden is on the defendant to

prove its applicability. *See Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). In evaluating

whether to toll the AEDPA limitation period, the Supreme Court has remarked, "Generally, a

litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way." *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005). To this end, the Sixth Circuit

considers the following five factors: (1) the movant's lack of notice of the filing requirement; (2)

the movant's lack of constructive knowledge of the filing requirement; (3) diligence; (4) absence

of prejudice to the respondent; and (5) the movant's reasonableness in remaining ignorant of the legal requirement to file the claim. *See Allen*, 366 F.3d at 401. Courts also evaluate a case for the existence of "extraordinary circumstances" sufficient to warrant equitable tolling. *See United States v. Stone*, 68 F. App'x 563, 565-66 (6th Cir. 2003). The proper inquiry is case-by-case and fact-based. *See Holland*, 130 S. Ct. at 2562-63.

Nothing in the record suggests that Williams and Tipton lacked actual or constructive notice of the filing requirement under section 2255, nor does the Court find any evidence of reasonable ignorance of the legal requirement to file the claim. In fact, Defendants/Movants met the appropriate deadline themselves while pro se. The record further reflects no extraordinary circumstances sufficient to warrant equitable tolling. On the instant record, the doctrine of equitable tolling does not preserve Williams's and Tipton's Ground Six contention.

For these reasons, the Court recommends that the District Court dismiss Ground Six as time-barred.

## 2. Procedural Default

Grounds Two and Four should be dismissed as procedurally defaulted. While ineffective assistance of counsel claims cannot generally be procedurally defaulted, *see Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003), claims of error by a District Court, like any other constitutional or non-constitutional issues, can be.

A section 2255 motion cannot substitute for a direct appeal. *See Sunal v. Large*, 67 S. Ct. 1588, 1590 (1947) ("[T]he general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."); *Peveler v. United States*, 269 F.3d 693, 698-703 (6th Cir. 2001) (analyzing procedural default). To assert a claim not raised on direct review, a defendant

ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998); *United States v. Frady*, 102 S. Ct. 1584, 1594 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Additionally, "[i]f claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available" subject to an analysis under *Strickland v. Washington*, 104 S. Ct. 2052 (1984). *See Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

Williams and Tipton had notice of the procedural default problem and an opportunity to address same. *See* DE #203 at 4-5; DE #204 at 4-5. Defendants/Movants cannot argue that they raised Ground Four on direct appeal because the only related challenge concerned sufficiency of the evidence for the conspiracy charges, not the mail fraud charges. *See Tipton*, 269 F. App'x at 557. Regarding Ground Two, Williams and Tipton alleged on direct appeal that the District Court punished them for exercising their right to go to trial, but made the allegation in the context of a sentencing disparity argument, not as a discrete basis for appeal premised on the superseding indictment. *See id.* at 562. Notably, Defendants/Movants have not alleged any ineffective assistance by appellate counsel.

For these reasons, the Court recommends dismissal of Grounds Two and Four as procedurally defaulted. Defendants/Movants cannot now raise the arguments for the first time.

### 3. Relitigation of Issues Decided on Direct Appeal

Grounds One, Three, and Six raise challenges already denied on appeal to the Sixth Circuit.[7] A section 2255 motion "may not be utilized to relitigate an issue . . . raised on appeal

---

[7] The Court has already recommended that Ground Six be dismissed as time-barred. The analysis in this subsection provides an alternative basis for dismissal.

absent highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).

Here, Williams and Tipton have provided essentially no information to support their arguments for relief, so the Court cannot determine if, in any way, the instant claims differ from those brought on direct appeal. From the record, reviewing both the Sixth Circuit opinion and the instant section 2255 motions, the claims appear substantially identical. In both, Defendants/Movants claimed District Court error in excluding essential witnesses and calculating loss amounts. *See, e.g.*, *Tipton*, 269 F. App'x at 559 (exclusion of witnesses); *id.* at 560 (calculation of loss). Additionally, Williams and Tipton alleged that the District Court erred in the disparities among Co-Defendants. *See id.* at 562. The Sixth Circuit rejected all such theories. Defendants/Movants further show not even the hint of any exceptional circumstances that would permit relitigation.

For these reasons, the Court recommends dismissal of Grounds One, Three, and Six as efforts to relitigate matters determined on direct appeal.[8] In sum, the Court recommends dismissal of Grounds One, Two, Three, Four, and Six for procedural reasons.

**B. On the Merits**

Ground Five remains to be resolved on the merits. Additionally, for Ground Two, the Court demonstrates that, even if Williams and Tipton had advanced the argument in a procedurally proper manner, the argument would yield no section 2255 relief. The Court provides no alternative analyses for Grounds One, Three, and Six because the Sixth Circuit

---

[8] To the extent nominal ground one in Tipton's motion seeks to relitigate sufficiency of the evidence under the section 371 conviction, that argument too would fall under application of *DuPont*.

analyses stand, and the Court likewise outlines no alternative analysis for Ground Four because the Sixth Circuit has long treated sufficiency of the evidence challenges as not cognizable in section 2255 proceedings. *See, e.g.*, *United States v. Shields*, 291 F.2d 798, 799 (6th Cir. 1961).

### 1. Ground Two: Superseding Indictment

As Ground Two, Williams and Tipton complain that the United States superseded the indictment against them because they refused to accept a plea bargain. *See* DE #199 at 4; DE #200 at 4. Defendants/Movants offer no other facts about the matter and essentially just complain that such action by the Government should not be permissible.

Williams's and Tipton's basic allegation yields no section 2255 relief. In some circumstances, *see Bordenkircher v. Hayes*, 98 S. Ct. 663, 669 (1978), a prosecutor may properly take exactly the action that Defendants/Movants allege to be wrong: supersede an indictment if defendants refuse to agree to a plea bargain. Here, Williams and Tipton have not alleged any circumstances in which a prosecutor could not legitimately take the actions about which they complain. *See Blackledge v. Perry*, 94 S. Ct. 2098 (1974) (vindictiveness by reindictment to discourage appeal); *North Carolina v. Pearce*, 89 S. Ct. 2072 (1969) (vindictiveness at resentencing); *see generally United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980) (describing factual distinctions relative to *Bordenkircher*). The record reflects only the addition of mail fraud charges from the original indictment to the superseding indictment. *See* DE #1 (Indictment); DE #48 (Superseding Indictment). That is, the conspiracy and tax evasion charges in the original indictment simply repeated in the superseding indictment. *See id.* As the Supreme Court has described, ultimately "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest

at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *See Bordenkircher*, 98 S. Ct. at 668. Further, of course, the evidence supported and the jury convicted on the added charges, thus confirming their propriety.

All Williams and Tipton have alleged is that the United States should not have been able to supersede the indictment because Defendants/Movants declined a plea offer, and that basic allegation simply fails under section 2255.

## 2. Ground Five: Ineffective Assistance of Counsel

For Ground Five, Williams and Tipton complain that their trial counsel, Hon. Michael Dean, performed ineffectively by failing to present the testimony of witnesses who could have explained where Movants' money originated. *See* DE #199 at 5; DE #200 at 5. Williams and Tipton never identify those witnesses or provide any statements or other information establishing their testimony.

To establish ineffective assistance of counsel, a movant must show that counsel's performance was deficient and prejudicial. *See Strickland v. Washington*, 104 S. Ct. 2052 (1984). First, the burden falls upon the defendant to demonstrate that "counsel's representation fell below an objective standard of reasonableness." *See id.* at 2064. The errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *See id.* Here, the court's review of counsel's conduct is highly deferential and "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 2065. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." *See id.*

Second, to establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 2068. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *See id.* at 2066. Courts can approach the *Strickland* analysis in any order, and an insufficient showing on either prong under *Strickland* ends the inquiry. *See Strickland*, 104 S. Ct. at 2069.

Williams and Tipton have failed to prove deficient performance of counsel. Here, they placed no evidence in the record to support their contentions, and the record documents that Defendants/Movants elected not to testify about the source of the subject money when afforded an opportunity to retake the witness stand. During a jury-out hearing late in the trial, Judge Coffman provided attorney Dean with a break specifically to consult with Williams and Tipton about that choice:

> THE COURT: All right. Now, Mr. Dean, it was my understanding that you said earlier that if your clients testified that they were going to testify before the expert so that they could say what they had and they could tell their story; and that way, it would not be something that was not in evidence already. And therefore, probably it would negate Mr. Tyson's testimony.
>
> I did not hear Ms. Tipton testify that she had $55,000 cash on hand 1/1/99. I did not hear Ms. Williams testify that she had $5,000 on hand 1/1/99. I did not hear either of your clients testify about the extent of the hand pays from the casinos.
>
> And so, I guess my question to you is: Should they just have been asked different -- and maybe I guess the first question I should ask you is, is my memory just faulty? The second question: Should they just have been asked different questions? And the third question is: Would you like to recall your clients to the stand so as to address any of this?
>
> MR. DEAN: I don't -- I agree with the Court. I think I asked all of those questions, and I don't think they testified as to the amounts at the beginning of '99, I don't believe. The second part, I may want to recall them, but I would like

to talk to them first.

THE COURT: All right. Let's just take a little break, then, to give you some time to do that.

We will recess for ten minutes. Is that long enough, Mr. Dean?

MR. DEAN: Yes.

THE COURT: All right. Until 1:45, please.

(Recess taken from 1:35 p.m. to 1:45 p.m.)

THE COURT: We are back in the courtroom. The jury continues to be out of the courtroom. What's your preference, Mr. Dean?

MR. DEAN: My clients do not wish to take the stand again, your Honor.

*See* DE #138 (Transcript of Jury Trial Proceedings on Sept. 20, 2006) ("9/20 Tr.") 29 at lns. 22-25; p. 30; p. 31 at lns. 1-7. Williams and Tipton declined to take the stand again, and while this decision not to testify further may not be held against them, Defendants/Movants also cannot reasonably argue that their attorney failed to address that potential testimony during trial. He performed in an objectively reasonable manner by requesting a break to discuss the matter with his clients and considering the possibility that they would offer testimony about the subject money.

Curiously, the hearsay testimony attorney Dean sought unsuccessfully to present to the jury instead consisted of out-of-court statements made by his clients.[9] *See* 9/20 Tr. 18 at lns.17-20. Williams and Tipton may now be arguing that someone else would have come to the trial and

---

[9] Some hearsay statements by Williams and Tipton had already come into evidence through the testimony of Agents Clark Caywood and Trent Tyson. *See, e.g.*, DE #137 (First Transcript of Jury Trial Proceedings on Sept. 15, 2006) ("First 9/15 Tr.") 30-42; DE #166 (Second Transcript of Jury Trial Proceedings on Sept. 15, 2006) ("Second 9/15 Tr.") 35-42, 46-49.

offered testimony about the source of the money, but that contention would be inconsistent with the testimony at trial. Specifically, defense witness William P. Farmer contended that Tipton said she received money from an Arnold Croutcher, who she said gave her money on a routine basis, *see id.* 19-20, but encouraged her not to put any of the money in a bank "because it makes it easier for [the IRS] to hunt you down." *See id.* 23 at lns. 2-3. Defendant/Movant Tipton told witness Farmer that she had $55,000 cash in a "top dresser drawer" on January 1, 1999, as a result. *See id.* 18 at lns. 17-18. As to Williams, she had reported to Farmer that she had $5,000 cash in a lockbox in her home on January 1, 1999, *see id.*, with this cash reportedly coming from casino winnings. *See id.* 19 at lns. 16-21. Attorney Dean attempted to place the hearsay statements in the record, but ultimately failed upon proper objection by the United States, argument by both sides, and ruling by Judge Coffman. *See id.* 31 at lns. 8-25; pp. 32-39; p. 40 at lns. 1-23.

Despite Defendants' bald and non-specific section 2255 contentions otherwise, nothing in the record shows that this testimony could have come from anyone else but Williams and Tipton. For instance, while testimony from Croutcher would perhaps bolster Tipton's contention that he gave her money regularly, he seemingly could not have testified as to what amount of money would be in her dresser drawer on January 1, 1999. Likewise, while witnesses may have testified that they observed Williams winning at casinos, they would not have been able to testify, at least not on the record before the Court, as to what amount of money appeared in her private lockbox on January 1, 1999. Attorney Dean made an offer of proof to preserve the issue for appeal. *See* 9/20 Tr. 40 at lns. 24-25; pp. 41-48; p. 49 at lns. 1-15. Because the key testimony could only have come from Defendants/Movants, on the record before the Court, they cannot

reasonably now fault attorney Dean for his failure to call additional unidentified witnesses, who seemingly would not have known such personal facts about Williams and Tipton as what specific amount of cash appeared in their dresser and lockbox on the first day of 1999.

Defendants/Movants also wholly failed to prove prejudice. *See Goldsby v. United States*, 152 F. App'x 432, 436 (6th Cir. 2005) (discussing an ineffectiveness claim for failure to interview and call a witnesses and noting that, where a movant produces no evidence that the interviews would have made a difference, no section 2255 relief should be afforded). Here, Williams and Tipton have not even shown who the witnesses would be, much less what those witnesses would have said and how that testimony would have made a difference. Without this showing, Movants have not approached, much less met, the prejudice standard.

On both prongs of the *Strickland* analysis, the ineffective assistance of counsel challenge merits no section 2255 relief.

## IV. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a

Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 120 S. Ct. at 1604.

The Court recommends, for the reasons stated below, that no Certificate of Appealability issue for any of the grounds in Williams's and Tipton's section 2255 motions. As to Ground One, no jurist of reason would debate whether the section 2255 motion stated a valid claim because alleged District Court error in excluding vital witnesses had already been addressed directly by the Sixth Circuit. No jurist of reason would question this ruling because the Sixth Circuit opinion contains a detailed discussion of the exclusion challenges as to Troy Farthing, Patsy Woolum, and William Farmer.

With Ground Two, no reasonable jurist would debate that Williams and Tipton failed to raise this challenge on direct appeal and have not shown cause and prejudice for the procedural default, despite notice of same. Even on the merits, based on the Court's alternative analysis, no jurist of reason would find the Court's conclusion debatable or wrong, as Supreme Court precedent establishes that the Government may in some instances supersede if defendants decide not to accept a plea offer and that circumstance constitutes the sum total of Defendants'/Movants' allegations here.

As to Ground Three, no jurist of reason would debate that no valid section 2255 claim has been stated because the Sixth Circuit already addressed the challenge in full on direct appeal. The appellate court even identified the Government's loss extrapolation method as "conservative." *See Tipton*, 269 F. App'x at 561.

Regarding Ground Four, no jurist of reason would debate that Williams and Tipton failed to raise this challenge on direct appeal and have failed to demonstrate cause and prejudice for the procedural default. Moreover, no reasonable jurist would debate that sufficiency of the evidence claims have long been regarded as improper in the section 2255 context.

With Ground Five, no jurist of reason would find the Court's conclusion debatable or wrong because Williams and Tipton not only failed to establish how the allegedly missing testimony would have made a difference, but they also neglected even to identify whom the witnesses would have been and what they would have said.

Finally, as to Ground Six, no reasonable jurist would dispute that counsel for Defendants/Movants offered this new ground for relief more than 300 days beyond the AEDPA statute of limitations or that this challenge had already been evaluated and rejected by the Sixth Circuit on direct appeal.

## V. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendants/Movants' motions for section 2255 relief as to all grounds. Because the filings and records establish conclusively that Williams and Tipton should receive no section 2255 relief, the Court need not conduct an evidentiary hearing. The Court also recommends that the District Court **DENY** a Certificate of Appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and

file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 13th day of January, 2011.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**